

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Murrell L. Buckner, Chairman
Game, Fish and Oyster Commission
Austin, Texas

Dear Sir:

Opinion No. 0-4105
Re: Is it lawful for any whole-
sale fish dealer and/or re-
tail fish dealer in this
State to sell or offer for
sale any redfish, channel
bass, speckled sea trout,
sheephead, flounder, pompano,
mackerel or gaff-topsail,
when any such fish has been
legally taken, filleted and
frozen in another State and
lawfully shipped into Texas?
And related questions.

The request for our opinion on the hereinabove cap-
tioned questions has been received by this department. We
quote from your letter as follows:

"The Game, Fish and Oyster Commission res-
pectfully requests your opinion on the following
questions:

"1. Is it lawful for any wholesale fish
dealer and/or retail fish dealer in this State
to sell or offer for sale any Redfish, Channel
Bass, Speckled Sea Trout, Sheephead, Flounder,
Pompano, Mackerel or Gaff-Topsail, when any such
fish has been legally taken, filleted and frozen
in another state and lawfully shipped into Texas?

"2. Is it lawful for any wholesale fish
dealer and/or retail fish dealer to fillet or
otherwise cut up any Redfish, Channel Bass,

Speckled Sea Trout, Sheephead, Flounder, Pompano,
Mackerel or Gaff-Topsail for delivery to a cus-
tomer on consignment?

"3. If the answer to Question 2 is in the
affirmative, may such filleted fish be sold if
rejected by the consignee?

"The condition is such that fish dealers
and packers in other states are reported to have
sold to fish dealers within the State of Texas
filleted frozen fish, some kinds of which are
referred to in Article 929 of the Penal Code.

"This Department is uncertain as to whether
to allow the resale of such products within this
state."

The power of the State to regulate and control the
taking of fish and to regulate or prohibit the sale of fish
when taken has been said to be absolute. Fish and game are
by legislative enactment and declaration the common property
of the whole people and part of the food supply of the State.
The Legislature, therefore, has power, not only to regulate
their slaughter or taking but to make laws regulating the
sale, possession and transportation of fish, and such other
laws as may be necessary to accomplish this purpose and de-
feat evasions and prevent violations of the law. 19 Tex. Jur.
701.

Article 929, Vernon's Annotated Penal Code, pro-
vides as follows:

"Art. 929. Oversize or undersize fish for
sale

"It shall be unlawful for any person to sell,
or offer for sale, or to have in his possession,
or to have on board any boat or to have in any
mercantile business establishment, or in any mar-
ket where merchandise is disposed of, any redfish
or channel bass of greater length than thirty-two
inches, or less than fourteen inches; any salt
water or speckled sea trout of less length than

twelve inches; any sheephead of less than nine inches in length; any flounder of less than twelve inches in length; any pompano of less than nine inches in length; any mackerel of less than fourteen inches in length, and any salt water gafftopsail of less than eleven inches in length.

"The place of sale or offering for sale or possession shall for the purpose of this chapter to establish venue, be either the place from which such fish are shipped, or where the fish are found, or offered for sale. It shall be unlawful in selling or offering for sale any fish mentioned in this article to sever the head from the body, except in case of the redfish and catfish in which case the head shall only be severed through the gill-cavity and the gill-fins shall remain on the body of such redfish or catfish. Such headless body of a redfish shall not measure more than twenty-seven inches in length, and such headless body of a catfish shall not measure less than eight inches in length; and all fish marketed or sold as mentioned in this article, must be weighed and sold with the head attached, except redfish and catfish as mentioned herein.

"Any person violating any of the provisions of this article shall be deemed guilty of a misdemeanor and upon conviction shall be fined a sum not less than ten ($10.00) dollars nor more than fifty ($50.00) dollars."

It appears to be manifest from the provisions of the quoted statute that it is unlawful for any wholesale fish dealer and/or retail fish dealer in this State to sell or offer for sale any of the fish mentioned therein either filleted or otherwise cut up if such fish were caught in Texas.

The answer to your first question, therefore, depends upon whether the quoted statute also applies to such fish, named therein, imported to Texas from other States. This specific question does not appear to have been before the courts of this State.

There appears to be a conflict of opinion in the other jurisdictions as to whether a game statute of one State refers to game imported after being killed in another State. Where such a statute does not by express language indicate that game of another State is either excluded or included, it is held in some jurisdictions that the term "game" or "any game" refers to all game, both domestic and foreign. Other jurisdictions hold that, inasmuch as penal statutes are to be strictly construed and only those acts are to be punished which are clearly condemned, game laws refer only to animals killed within the jurisdiction, unless their terms require their application to game killed in another State. See 12 Ruling Case Law 696.

From a careful study of many of the cases on both sides of this question, taking into consideration the wording of the particular statutes in each instance, we are of the opinion that the better view is that taken by those courts which hold that such a statute applies to all game, both domestic and foreign.

In any event, we think that Article 929, supra, expresses the law on this question in plain and unambiguous language, leaving its meaning clear and obvious, to-wit, that all fish mentioned therein, whether domestic or foreign, can be sold, etc., in Texas only as therein provided. There is, therefore, no room for construction. It is well settled in Texas, that in such a case, the law will be applied and enforced as it reads, regardless of its policy or purpose. See 39 Tex. Jur. 161, 162.

In the case of Ex parte Maier (Calif.) 37 P. 402, the court had before it a California statute reading that:

"... ; 'Every person in the State of California who shall at any time sell, or offer for sale, the hide or meat of any deer, elk, antelope or mountain sheep, shall be guilty of a misdemeanor.' . . . ."

The court held that said statute extended to, and included, the selling of the hide or meat of any such animal, though lawfully killed beyond the State. We quote from the court's opinion as follows:

". . . . Petitioner contends that this provision of the statute, properly construed, does not prohibit the sale of deer meat lawfully taken without the state, but has reference solely to deer killed within this state; that the law is intended to protect game within the state, not to prohibit the importation and sale of game from other states. With this contention we are unable to agree. It is true the law is intended for the protection of the game within the state, but it by no means follows from that fact that it is not the intention, as a means to accomplish that very end, to prohibit the sale of the meat of the animals procured elsewhere. The statute is perfectly plain and unambiguous in its terms, and is sufficiently broad and comprehensive to include the inhibited article wheresoever taken or procured. It does not confine itself in terms or by implication to the meat of deer killed in this state, but denounces as unlawful the sale of the meat of any deer; and there is nothing elsewhere in the statute tending to give it a more restricted sense. The language is too plain to leave room for construction, and we are not at liberty, even if so disposed, to place a limitation upon the meaning of the legislature which its language will not support. But we have no doubt that the legislature intended exactly what its words import. Aside from the explicit language in which this particular provision is couched, an examination of the various changes which these sections of the Code relating to protection of game have undergone at the hands of the legislature is persuasively convincing of the intention to do just what this act does by its terms; -- entirely prohibit traffic in the meat of these game animals within the state, no matter where killed. And it need hardly be suggested that such a provision, if enforced, will lend great aid to the attainment of the object sought. The facility and ease with which the statutes for the protection of game have been evaded in the past is a matter of common knowledge. Deer and other game have been slaughtered during

the close season, and foisted upon the market
as game procured without the state; and, owing
to the practical impossibility in the great major-
ity of cases of proving with certainty the source
from which it was procured, the attempted en-
forcement of the statutes for its protection has
largely proven abortive. These and like consider-
ation no doubt actuated the legislature in the
premises, and induced the enactment of the stat-
ute in its present stringent form; and we know of
no good reason why it should not be held to mean
what it says."

Having concluded that Article 929, supra, applies
as well to such imported fish as to domestic fish, we need
only make the further inquiry as to whether such a statute
is a valid exercise of the police power of the State of Texas
or unconstitutional as an interference with interstate com-
merce.

That such a statute is valid, appears to be well'
settled since the passage by Congress in 1900 of what is com-
monly known as the "Lacy Act." (31 Stat. 188) Said Act pro-
vides that the dead bodies or parts thereof of wild game
animals or game or song birds when transported into any State
shall be subjected to the laws of the State, enacted in the
exercise of its police power, to the same extent as if such
game had been produced in such State, and shall not be exempt-
ed therefrom by reason of importation in original packages.
In our opinion, the word "game" as used in the Lacy Act, in-
cludes fish. Words and Phrases (P. Ed.) Vol. 18, p. 58.

It may be pointed out that all of the species of
fish named in Article 929 are food fish, found and caught
in the salt waters of this State in great numbers. The tak-
ing of such fish above or below the sizes specified in the Act
may properly, therefore, be considered an injury to the food
supply of the people of this State. It is now well settled
that a State may prohibit the sale or possession of fish of
certain sizes even if brought from without the State. The
object of such a law is not to affect the legality of the
taking of fish in other States, but to protect the local fish
in the interest of the food supply of the people of this
State. Silz v. Hesterberg, 211 U. S. 31.

If foreign fish of the size and species mentioned in the Act, may be filleted, frozen and sold in Texas, there is nothing to prevent Texas fish of such size and species from being caught in Texas waters, carried to another State, filleted, returned and sold in Texas.

In your second question we presume you mean any such fish dealer in Texas.

In view of the foregoing, it is the opinion of this department, under the facts stated, that both your first and second questions should be answered in the negative, and each is so answered.

In view of our negative answer to your second question, it becomes unnecessary to answer your third question.

Trusting that your inquiry has been fully answered, we are

Very truly yours

ATTORNEY GENERAL OF TEXAS

By Edgar Pfeil
Edgar Pfeil
Assistant

EP:db

APPROVED JUN 13, 1942

ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE
BY ____
CHAIRMAN